THOMAS MANCHESTER, *et al.*, plaintiffs in error, *v.* WILLIAM McKEE, executor of Jesse McKee, deceased, defendant in error.

*Error to Pike.*

It was alleged in a creditor's bill to subject certain lands to execution, that two judgments had been recovered by the complainant against the debtor, that executions had been issued thereon, and that they had been returned unsatisfied, except for a small amount of each. The bill further alleged fraudulent transfers of the lands, for the purpose of hindering and delaying creditors, &c: *Held,* that the allegations of the bill entitled the complainant to relief.

A party against whom a bill has been taken for confessed, cannot complain and assign for error that the proof does not sustain the allegations of the bill.

Under the provisions of the 19th section of the Chancery Act, when a bill is taken for confessed, it is left to the discretion of the Court, whether any proof shall be required in support of the bill; or what parts of the bill shall be supported by proof, and, of necessity, what shall be the amount, nature and character of the proof to be produced.

One cannot allege as error that which is for his own benefit.

Where it appeared that a creditor had not caused an execution to be issued on his judgment, and had made no effort to collect it, and the Court, on a creditor's bill being filed, decreed the payment of such judgment, it was *held to* be erroneous.

Where a judgment in attachment has been rendered against a defendant who has not been brought into Court so as to make it a judgment *in personam,* such judgment is not evidence of a debt.

BILL IN CHANCERY, &c. in the Pike Circuit Court, filed by the defendant in error against the plaintiffs in error, and heard before the Hon. Samuel D. Lockwood, at the September term 1844.

The decree rendered in this case, and the allegations of the bill, &c., are stated in the Opinion of the Court.

*M. McConnell,* for the plaintiffs in error.

*D. A. Smith,* for the defendant in error.

The Opinion of the Court was delivered by

CATON, J. The bill states that the complainant, on the 9th of February 1839, received from three of the defendants, J. &

G. A. Manchester and Dewell, three promissory notes, bear-
ing date of that day, and executed by them for a good con-
sideration, amounting in the aggregate to the sum of $2876·92.
The one which fell due last, was for the sum of $980·21,
which was payable one year from date. That on the 2d De-
cember, 1839, he obtained a judgment against John Man-
chester, impleaded, &c., on another of said notes before the
Probate Court of Pike county, for the sum of $920·09. That
at the April term 1840, of the Pike Circuit Court, he obtain-
ed a like judgment on the other of said notes, for $994·90.
That executions have been issued on said judgments, but
returned unsatisfied, except as to $49·50, made on the first
judgment, and $160·01 made on the second judgment. That
he is in danger of losing the balance of said indebtedness by
the fraud and insolvency of the makers of the notes, and of
the defendant, Thomas Manchester.

That on the 11th of October, 1839, the defendant, Dela-
hay, mortgaged to John Manchester certain real estate,
which is described, to secure the payment of $2700, paya-
ble in one year. That on the 13th of November, 1839,
John Manchester conveyed to Thomas Manchester, certain
other real estate described, fraudulently and with the intent
to defraud the complainant and other creditors. With the
view of showing that this transfer was fraudulent, the bill
sets forth a variety of circumstances, which it is unnecessary
to notice here. That on the same day, John assigned to
Thomas the said mortgage with the like fraudulent intent.
To foreclose this mortgage, Thomas Manchester filed his bill
in the Pike Circuit Court, on the 2d of March, 1841, and a
decree of foreclosure was entered at the September term
1841, under which the mortgaged premises were sold on the
18th December, 1841, to the said Thomas Manchester, for
$2730·25.

There is another proceeding set out in the bill, which, as
it cuts no important figure in the case, it is unnecessary to
mention.

The bill then avers, that "by a mortgage junior to the
aforesaid mortgage," Vansyckle for himself, McConnell &

McDougall, "or otherwise, is in possession of the said mortgaged premises, claiming an interest therein," and is exercising a ferry privilege, &c., and that Matthews "is in possession of some other parts of said real estate, claiming some sort of interest in the same."

In the prayer of the bill, the complainant asks for an equitable writ of attachment, to be levied upon the said real estate as the property of John Manchester, to be applied under the decree of the Court to the payment of the note first above mentioned. The prayer also asks that the said conveyances of real estate, and assignment of the mortgage from John to Thomas Manchester, may be set aside as fraudulent, and that the said real estate may be sold by the order of the Court, "in satisfaction of what may be due your orator in the premises," and for general relief.

John, Thomas, and George Manchester, and Dewell, being non-residents, were brought in by publication, and the other defendants were served with summons. On the first day of June, 1843, an order was made allowing the complainants to take the deposition of the defendant, Delahay, subject to exceptions for interest, and on the same day, also, the bill was taken for confessed as to George Manchester, Dewell and Delahay.

On the eighth of June, 1843, Thomas Manchester filed his answer, and on the twelfth of the same month, John Manchester filed his answer, both denying the alleged fraud, and insisting that the sales and assignment were *bona fide*, and for a good consideration. And on the twenty third of the same month Vansyckle, McConnell and McDougall filed their demurrer to the bill.

On the ninth of September, in the same year, a replication was filed, and on the same day, by leave of the Court, the the complainant filed an amendment to his bill as the record states, showing that, at that term of the Court, the complainant had obtained a judgment at law, on the first described note for the sum of $1190·91, and costs.

On the sixth of September, 1843, the demurrer was submitted to the Court, and was taken under advisement, till

the fourth of September, 1844, when it was overruled, and for want of answer, the bill and amended bill were taken as confessed against Vansyckle, McConnell, McDougall and Matthews. On the same day, the cause was finally heard and a decree upon the merits entered.

The decree determines:

*First,* that the complainants obtained judgment at law on the said three promissory notes, as alleged in the bill and amended bill;

*Second,* that the said assignment and transfers were made in fraud of the said complainant;

*Third,* that the Master make sale of said premises, and convey the same to the purchaser by deed, conveying all the right, &c. of the defendants to said premises, subject only to such right of redemption as the judgment creditors of John Manchester may have to the same; and that said Master pay over the proceeds of said sale to the complainant, the balance due on such judgments and interest;

*Fourth,* it is ordered, that upon making sale of any of said premises, all persons in possession thereof by virtue of any assignment from any of the defendants since the filing of the bill, give the possession to such purchaser, and especially to the Naples ferry appertaining to a portion of said land; and

*Fifth,* costs are adjudged against John and Thomas Manchester, and cause continued for report.

On the nineteenth of April, 1845, the Master reports that on the fourteenth of September, 1844, after notice, &c., in pursuance of the decree, he offered four of said tracts separately, the first containing forty acres, the second containing five acres, the third containing one hundred and fifty five acres, and the fourth containing fifty eight acres, the said land being appurtenant to the Naples Ferry, and there were no bidders, when he offered them together, and the complainant became the purchaser at $1400·00. At the same time, he offered for sale four tracts which were bid off by the complainant at prices from seventy five cents to three dollars and seventy five cents per acre; and two tracts of forty acres, and one tract of eighty acres, which were struck off

to the complainant for ten cents each; for all of which he had given a deed to the complainant, subject to the right of redemption as specified in said decree. The commissoner further reports, that there had been no offer to redeem any part of said premises under said decree, which report was approved by the Court.

I shall first inquire, whether the demurrer of Vansyckle, McConnell and McDougall was properly overruled. These defendants, so far as is shown by the bill, were merely nominal parties, who might or might not have any interest, which might be affected by the decree. They were made parties to give them an opportunity to come in and show their interest, if they had any, to specify its nature and extent in their answers, and to defend and protect it. The bill does not show that they had any, nor does it appear that the complainant knew of any interest existing in them. The averment of the bill is, that one of them was in possession of a portion of the premises sought to be subjected to the payment of complainant's debt, for himself and the other two, by a junior mortgage or otherwise. This showed such a claim of interest, as the complainant had a right to protect himself against, by making them parties, and concluding them by the decree, unless they could show that they ought not to be thus concluded. Such is the usual and proper course in all Chancery proceedings. The averment, then, so far as these defendants were concerned, was right and proper, and if the bill was, in other respects, such as entitled the complainant to relief, the demurrer was properly overruled.

This is a creditor's bill, whereby the complainant seeks to subject certain lands, which he could not reach by an execution, to the payment of two judgments, one obtained in the Probate Court, and one in the Circuit Court of Pike County. The bill shows the recovery of the judgments against John Manchester, that executions had been issued upon those judgments, which had been returned unsatisfied, excepting as to a small amount of each. This is sufficient to entitle the party to file his bill. *Beck* v. *Burdett,* 1 Paige, 305; Rev. Stat. § 36, ch. xxi, title, *Chancery.* It shows *prima facie*

that he had exhausted his legal remedy. It is as much as is required, in the first instance, of a second indorser of a note under our statute to show, to enable him to recover of the first indorser; and in this case as in that, the defendant might probably resist the application successfully, by showing that the complainant actually knew of other property, out of which he might have made his debt by execution. This far, then, the bill is sufficient. It further shows, that for the purpose of hindering and delaying the complainant in the collection of his debts, and for the purpose of defrauding other creditors, the judgment debtor had transferred a considerable amount of real and personal property to the defendant, Thomas Manchester, and had, with the like intent, assigned to him a mortgage upon other lands, which the assignee had foreclosed, and purchased in the lands in his own name, and prays that all of these lands may be subjected to the satisfaction of what may be due to the complainant in the premises. According to the well established rules of Equity law, this shows such a case as entitles the complainant to relief. The extent of that relief may be hereafter considered, but this is sufficient to show that the bill was not obnoxious to a demurrer.

I may here remark upon a novel proceeding attempted to be introduced by this bill, and that is, that for the purpose of securing and obtaining satisfaction of one of the notes mentioned in the bill, (but upon which no judgment had been obtained at law,) the party prays for an *equitable attachment* to be levied upon the premises upon which the mortgage had been foreclosed, and which had been purchased in by Thomas Manchester, the alleged fraudulent assignee of the mortgage. But, for this proceeding, I can find no authority in the former practice of the Courts of Equity, or in the provisions of our statute. For the purpose of obtaining a satisfaction of this note the amended bill was filed, averring that since the filing of the bill in this cause the complainant had obtained a judgment upon that note also. This branch of the case will be again referred to.

It may be well now to examine and see what position the

several plaintiffs in this writ of error occupy in relation to this decree, as exhibited by this record. In the first place, the bill was taken for confessed, as to all of them except John Manchester and Thomas Manchester. Vansyckle, McConnell, and McDougall appeared and demurred to the bill. That demurrer, as we have seen, was properly overruled. They then refused, or at any rate failed to file an answer, and then the bill was regularly taken *pro confesso,* as we are to presume, according to the rules of practice and usage of that Court, against them, as also against the other defendants, G. A. Manchester, Matthews, Dewell and Delahay, who never appeared before that Court at all. I am of opinion, that a party against whom a bill is taken for confessed, cannot complain and assign for error, that the proof does not sustain the allegations of the bill. The nineteenth section of our Chancery Act, provides that, "where a bill is taken for confessed, the Court, before a final decree is made, if deemed requisite, may order the complainant to produce documents and witnesses to prove the allegations of his bill, or may examine the complainant on oath or affirmation, touching the facts therein alleged; such decree shall be made in either case as the Court shall consider equitable and proper." By this law, when a bill is taken for confessed, it is left to the discretion of the Court, whether any proof shall be required in support of the bill or not, or what parts of the bill shall be supported by proof, and of necessity, what shall be the amount, nature and character of proof to be produced. With such a discretion vested in the Court, it would seem absurd to say, that the Court acted upon insufficient proof. If it would not be error to make a decree without any proof, it is not easy to comprehend where the error is, in rendering a decree upon insufficient proof. Where a bill is taken for confessed from the silence of the party, he is as much estopped in that particular case, from denying its truth—except in particular instances where he may come in under the statute and open it—as if he had appeared in open Court and filed an answer, confessing the truth of the bill throughout. Here, a part of these defendants did, in fact, confess

the truth of this bill by their demurrer, and insisted that the facts, thus confessed, did not entitle the complainant to any relief, and when that was ruled against them, they chose to abide by that confession rather than withdraw it, and file an answer putting in issue the allegations of the bill. After this, they cannot complain that that is not proved which they have admitted to be true.

As to Thomas Manchester, it appears from the record here, that he has released to the complainant all errors in this cause, by not replying to the complainant's plea aver- ing that fact, so that he has ceased to complain, and he is the only party in fact, whose interest could have been af- fected essentially by this decree, so far as it appears from this record. A similar plea is interposed as to Mitchell, to which also there is no replication.

And now how stands it with John Manchester? He, it seems to me, is the last person of all others who has any right to complain of this decree, in which, if there is any error, it most manifestly is in his favor, and directly to his advantage; for by it a considerable amount of judgments against him is paid out of the property of another, which, according to his own answer, he has sold and received his pay for; and it seems to me that his conscience need not be too sensitive on the subject, since he has promptly come forward, and done all he could to prevent such a result by his answer. If, in this decree, error has been committed, it is in his favor, although against his will, and he cannot com- plain. *Schlencker v. Risley,* 3 Scam. 486. Although, as we have seen, none of the parties who are complaining, have any right to complain that the allegations of this bill are not sustained by the proof, yet we do not hesitate to say, that those allegations are made out in their most material partic- ulars by the evidence, especially so far as they have been put in issue by the answers; but from the view which we take of this cause, it is not necessary to encumber the Opin- ion of the Court with a particular review of it.

It now remains to be considered, whether the decree which was rendered, was such as the allegations of the bill and

amended bill authorize; for although the defendants below, who allowed the bill to be taken *pro confesso,* cannot now deny its truth, yet they have a right to insist that no decree shall be made which may affect their interest, beyond what their admissions will warrant. The complainant has made them parties to bar their interests, and he must see to it, that he confines himself to the rights which he has claimed to have.

What has been already said on the subject of the demurrer, shows that the complainant was entitled, by the allegations of the bill, to the relief sought, to the extent of the payment of the two first judgments out of the property fraudulently conveyed. But as it was insisted that the prayer only sought the payment of the note described in the bill, and not of the two judgments, it becomes necessary to examine the prayer with the view to ascertain if that be so.

The prayer of the bill commences with asking for an equitable attachment to be levied upon said real estate, as the property of John Manchester, to be applied under the decree of the Court to the payment of the first note. It is supposed by the counsel for the defendant in error, that it is upon this portion of the prayer, that the Court decided the payment of the two judgments; and if so, it was certainly unauthorized; for by this the party only seeks satisfaction of the note under that attachment proceeding, which, as we have seen, was unauthorized, and hence the prayer must be considered as if that portion were stricken out. After that, the prayer asks that the said real estate may be sold by the order of the Court, in satisfaction of what may be due your orator in the premises. This was manifestly asking that all that was due to him on account of the several demands previously stated in the bill, and was manifestly sufficient. But if any doubt could be entertained on the subject, the general prayer is sufficient to authorize the granting of any relief which the statement of the bill would warrant.

It now remains to be examined, whether the Court was warranted in decreeing the payment of the judgment which was rendered in the attachment suit, which was obtained after the filing of the bill in Chancery, and which is brought

to the notice of the Court by the amended bill. There are two objections, which, to my mind, are conclusive against that portion of the decree which directs the payment of this judgment. The first objection is, that no execution was ever issued upon this judgment, and consequently, no effort made to collect it at law. This is indispensable, according to the case of *Beck* v. *Burdett* before referred to, and this is supported by all the cases which I have examined. If it should be said, with a view to obviate this difficulty, that the property levied upon was not liable to an execution, and that, consequently, it would have been futile to have issued one upon which nothing could possibly have been made; that but shows that the attachment was levied upon property not liable to the attachment, and that being a proceeding *in rem,* for want of anything upon which it could legally act, the Court should not have entertained the case, but dismissed it, which it would have done, had the plaintiff informed the Court that the property levied upon was not subject to attachment. But there is another objection, which it seems to me is equally fatal, and that is, that a judgment in an attachment suit where the defendant has not been brought into Court so as to make it a personal judgment, is not evidence of the debt upon another suit brought upon that record. The decree, then, will have to be modified, so as to allow the complainant only to seek a satisfaction, out of the said real estate, of the two judgments stated in the original bill, and that portion of it which directs the satisfaction of the judgment in the attachment suit will have to be reversed. As the sale was ordered and made upon an erroneous decree, which is partially reversed, the sale has to be set aside of course, and a re-sale ordered; and hence it becomes unnecessary to look into the regularity of that sale, which otherwise would present a very serious question.

The decree of the Circuit Court is reversed, and the cause remanded with directions to the Circuit Court, to render a decree, and to proceed consistently with the principles of this Opinion; and that each party pay one half of the costs of this writ of error.

*Decree reversed.*