CHICAGO—FIRST DISTRICT—JULY, 1909. 137

Ayres v. The Graham Steamship C. and L. Co., 150 Ill. App. 137.

Thomas P. Ayres, Appellee, v. The Graham Steamship
Coal and Lumber Company, Appellant.

Gen. Nos. 15,705, 15,714, 15,733.

Consolidated for Hearing.

1. VENDORS AND VENDEES—*lien of latter*. The doctrine of a ven-
dee's lien must rest for its support upon the actual property in-
volved in the contract in question.

2. ATTACHMENTS—*propriety of equitable*. Our courts neither rec-
ognize nor favor equitable attachments; and the granting of an
injunction and the appointing of a receiver which operate by way
of equitable attachment, will not be sustained.

3. RECEIVERSHIPS—*when failure to require bond erroneous*. By
statute a bond should be required of the party making the appli-
cation before appointing a receiver. To appoint a receiver and
provide for the bond to be given by the complainant at a later
date is not a compliance with the statute.

No. 15,705: Bill for injunction. Appeal from the Superior
Court of Cook County; the Hon. A. H. CHETLAIN, Judge, presiding.
Heard in this court at the March term, 1909. Orders reversed.
Opinion filed July 12, 1909.

Nos. 15,714 and 15,733: Bills in chancery. Appeals from the
Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge,
presiding. Heard in this court at the March term, 1909. Order
reversed. Opinion filed July 12, 1909.

INTRODUCTORY. These three cases, consolidated for
hearing, present for our review two injunctional
orders granted by a chancellor of the Superior Court
on March 23, 1909, and March 26, 1909, respectively,
and an order appointing the Chicago Title & Trust
Company receiver of certain property of appellant, en-
tered April 9, 1909.

These orders are interlocutory in their nature and
these appeals therefrom are prosecuted pursuant to
section 123, chapter 110, R. S., title "Practice,"
Hurd's 1908 ed. Proceedings post-dating April 9,
1909, are brought to our attention by counsel for ap-
pellee and urged in argument to influence our deci-
sion, but with them we are not concerned. Our re-
view is restricted to the proceedings had in the cause,

138    APPELLATE COURTS OF ILLINOIS.

Ayres v. The Graham Steamship C. and L. Co., 150 Ill. App. 137.

from which these appeals are prosecuted, on and prior to April 9, 1909.

With the merits of the controversy appearing from the pleadings in this record, we do not intend, by anything we shall here set down, to pass judgment, nor do we desire to be understood therefrom as deciding any questions involved saving only the integrity of the injunctional orders and the order appointing a receiver, challenged in these appeals.

**Statement by the Court.** Appellee filed his bill against appellant, in which he seeks to rescind a contract of date August 27, 1907, by which he agreed to purchase timber licenses of appellant embracing 110,-000 acres, more or less, of timber limits on Masset Inlet, Graham Island, in the Province of British Columbia, and to pay therefor five hundred and fifty thousand dollars. The ground for rescission is alleged to be fraudulent representation as to acreage and title to the timber licenses. Appellee, on August 1, 1907, paid ten thousand dollars on account of the purchase price, which, with subsequent payments, he seeks to recover back from appellant. This contract was preceded by an option agreement, dated June 22, 1907, between appellee and appellant and Daniel C. Buntin and E. R. Talmadge, which, together with an addenda thereto in the nature of a guarantee from one B. F. Graham, of date June 24, 1907, was on that date delivered to appellant. On August 8, 1907, Buntin and Talmadge assigned their interest in the option contract and guarantee contract of Graham to appellee. By the contract of August 27, 1909, appellee bound himself to pay the purchase price (excluding the ten thousand dollars cash payment), as follows: $15,000 September 15, 1907; $50,000 October 23, 1907, and the balance, $475,000, in six months from the contract date. The bill alleges that appellee made two additional payments, one of $5,000, September 27, 1907, and one of $4,200, October 15, 1907, making the total of cash paid upon the contract of purchase $19,200;

that on November 12, 1907, appellee first learned of the shortage in acreage from the report of "cruisers" sent out to estimate the amount of acreage; that thereupon appellee notified appellant of the shortage and that he would not pay any more money upon the contract until an accurate survey had been made, etc., by competent engineers, and that nothing of the kind has been done; that negotiations for a settlement were made and continued until November, 1908, when the parties failed to come to any agreement; that appellant commenced against appellee two suits in the Superior Court of Cook county, in each of which it seeks to recover $100,000 of the consideration due by the terms of the contract of purchase. The bill prays that the contracts may be decreed to have been secured by misrepresentation and fraud on the part of appellant and ordered to be cancelled and delivered up; that appellant further decreed to pay appellee the aforesaid $19,200, with interest, and that appellant be permanently enjoined from prosecuting the two suits in the Superior Court, and for other relief.

On March 23, 1909, appellee filed an amendment to his bill, in which he charged that the capital stock of the Graham Island Lumber Co. was divided into 3,000 shares of the face value of $100 each, and that appellant owned all of said shares except four, which were held by its officers and employes, and prayed for a lien upon all the shares of stock owned by appellant to secure the payment of all moneys which shall be decreed to be paid by it to appellee, and that on failure of appellant to pay such amount, that the stock be sold. On the same day appellee filed a supplemental bill, which *inter alia* charges that on June 30, 1908, appellant sold 1,500 shares of said stock to certain persons for the sum of $225,000, and that on December 30, 1908, it sold 1,000 more of such shares to one Emmet Queen of Pittsburgh, and took in payment Queen's notes aggregating $300,000, secured by a pledge of the stock sold, with power to sell the same on default of payment of the notes or any of them; that Queen has de-

140    Appellate Courts of Illinois.

Ayres v. The Graham Steamship C. and L. Co., 150 Ill. App. 137.

faulted and appellant is about to sell the 1,000 shares of stock at public auction on the steps of the Federal Building in Chicago, at two o'clock on the day the supplemental bill was filed; that the president of appellant is in Chicago to make the sale; that appellant, by its president, declares it will not repay to appellee any money received by it from him on said contracts; that appellant will take the proceeds of such sale out of the State, and will sell and dispose of the remaining 500 shares of stock and divide the same among its stockholders; that all of appellant's assets remaining consist of the Queen indebtedness and securities and the 500 shares of Island Company stock still unsold; that unless a receiver is appointed, the assets of appellant will be taken without the jurisdiction of the court, and thereby the lien of appellee lost, as also all moneys which the court may decree to him; prays for the appointment of a receiver to take possession of the Queen notes and the 1,000 shares of stock held by appellant as collateral security, and also the remaining shares of stock held by appellant, and for an injunction restraining the disposition of the foregoing assets by appellant and from removing them beyond the state, etc.

An injunctional order was entered and a receiver appointed as prayed, without notice, on the day the supplemental bill was filed. On the following day so much of the order as appointed a receiver was vacated. The injunction was not affected by this order. On March 26, 1909, the chancellor again enjoined appellant from disposing of, encumbering, charging, or removing from this state the Queen notes or the 1,000 shares of stock held as collateral thereto, and continued the motion for a receiver to April 9, 1909, on which date, after a hearing, that motion was granted, and the Chicago Title & Trust Company appointed receiver of the Queen notes and stock covered by the injunctional order last recited, and appellant was required to deliver the notes and stock to said receiver. Appellee was ordered to give a bond in the penalty of $10,000, to be approved

by the court, within four days of the entry of the order.

CALHOUN, LYFORD & SHEEAN and JOHN A. McKEOWN, for appellant.

BUELL & ABBEY and WILLIAM K. LOWREY, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Two separate and distinct transactions are here involved, neither of which is even remotely related to the other. Appellee seeks to rescind contracts relating to his purchase from appellant of certain timber licenses on the ground of misrepresentation and fraud, and to have such contracts cancelled and all money paid on account of the purchase price, with interest, decreed paid back to appellee. This is one transaction. The other is a sale by appellant to one Emmet Queen of 1,000 shares of Island Company stock for $300,000, the taking of seven notes of Queen for the purchase price, with a retention of the stock sold as collateral security for payment of such purchase price. We take it from the argument of appellee that the injunction and receiver are intended to be adjuncts to the enforcement of a vendee's lien, which, under the facts averred by appellee, arise in his favor upon the Queen indebtedness and security to appellant. But, as we understand, the doctrine of a vendee's lien must rest for its support upon the actual property involved in the contract sought to be avoided. As applied to the case in hand, such lien of appellee would attach to the timber licenses the subject-matter of the contract between the parties, and to nothing else. To such subject-matter is the lien of the vendee restricted. Such is the trend of all the authorities cited by appellee, and none in this state is in conflict. It therefore follows that neither the injunction nor the receivership can be sustained on the theory that appellee has a vendee's lien on the Queen stock and notes, or any interest in or claim to them. As this court said in Lemker v.

142    APPELLATE COURTS OF ILLINOIS.

Ayres v. The Graham Steamship C. and L. Co., 150 Ill. App. 137.

Kalberlah, 105 Ill. App. 445, "While it is true that the appointment of a receiver *pendente lite* is a matter of discretion, it is not a matter of arbitrary discretion. Facts must exist and be made to appear to the court warranting exercise of the power and justifying taking into its possession the property in controversy. It is essential that the complainant should show * * * either a clear legal right in himself to the property in controversy, or that he has some lien upon it, or that it constitutes a special fund out of which he is entitled to the satisfaction of his demand." As said in Leeds v. Ill. State, etc., 122 Ill. App. 650, "It does not appear from the allegations of the bill that the complainants have any interest whatever in the subject matter of the litigation."

Appellee having no interest in the property, committed to the custody of the receiver, the only other theory upon which the action of the chancellor, in making the orders appealed from, can be sustained, is, that by reason of the non-residence of appellant and the fact that aside from the Queen securities it has no property subject to execution in this jurisdiction, therefore appellee has the right to the remedy granted by the injunctional and receivership orders, which in their essence, operate as an equitable attachment preserving the assets ordered into the hands of the receiver appointed, so that the same may be subjected to the payment of any money decree which shall be thereafter adjudged against appellant. But the difficulty of this situation lies in the fact that our courts neither recognize nor favor equitable attachments. Such has been the uniform attitude of our courts. In Dewey v. Eckert, 62 Ill. 218, the court say: "Our law does not recognize equitable attachments. Bigelow et al. v. Andress et al., 31 Ill. 323. This proceeding would virtually be one if it could be sustained as to the lands involved." These remarks are of equal force and application to the condition confronting us and are decisive against appellee's right to maintain a legal status in this case, which operates as an equitable at-

tachment against the property of appellant. Detroit v. Ledwidge, 162 Ill. 305.

MR. JUSTICE CATON made these observations in Manchester v. McKee, 9 Ill. 511: "I may here remark upon a novel proceeding attempted to be introduced by this bill, and that is, that for the purpose of obtaining satisfaction of all of the notes mentioned in the bill (but upon which no judgment had been obtained at law), the party prays for an *equitable attachment* to be levied upon the premises upon which the mortgage had been foreclosed. * * * But, for this proceeding, I can find no authority in the former practice of the courts of equity, or in the provisions of our statute."

It was reversible error, even had it been otherwise permissible, to appoint a receiver, to make such order by fixing the bond of appellee and ordering it to be approved by the court within four days of the entry of the order. The statute governing this practice is contained in section 1, title "Receivers' Session Laws, 1903," which reads "that before any receiver shall be appointed, the party making the application shall give bond to the adverse party in such penalty as the court or judge may order, and with security to be approved by the court or judge, conditioned to pay * * * provided that bond need not be required when for good cause shown and upon notice and full hearing, the court is of opinion that a receiver ought to be appointed without such bond." As this court said in Watson v. Cudney, 144 Ill. App. 624, 629, "To entitle appellee to the appointment of a receiver, he must as a *sine qua non* to the enforcement of that right, give the bond required by the statute, unless it is the opinion of the court that a receiver ought to be appointed without bond, and then the court's opinion must affirmatively appear in the order making the appointment. The statutory requirement in this regard cannot be dispensed with. It was evidently enacted for the purpose of making liable the moving party in a receivership proceeding, for such damages as might result from the improvidence of his act in bringing

about a receivership where none should have been asked.''

Courts are without power to appoint receivers without first requiring a complainant to give a bond, provided by section 1, *supra,* unless the necessity of giving bond is dispensed with in the order of appointment.

While it would seem that the injunctional order of March 26, 1909, was intended to supersede that of March 23, 1909, yet it did not do so, and while they are not in conflict, yet as they still cumber the record, it is our duty to remove each of them therefrom.

For the errors indicated the injunctional orders of March 23 and 26, 1909, and the order of April 9, 1909, appointing the Chicago Title & Trust Company receiver, are each reversed, and orders reversing the injunctional order will be entered in cases Gen. No. 15705 and 15714, and an order reversing the order appointing a receiver will be entered in case Gen. No. 15733.

*Orders reversed.*