1829.

Beck
v.
Burdett

The motion to dissolve the injunction is denied, with costs.

---

### BECK v. J. & B. C. BURDETT.

Where property is subject to an execution, and a fraudulent obstruction is interposed to prevent the sale, a creditor may file his bill here to remove the obstruction as soon as he has obtained a specific lien upon the property, by the issuing of his execution.

But if the property is not a subject of levy and sale on execution, the creditor must show his remedy at law exhausted by an actual return of the execution unsatisfied, before he can file a bill in this court to reach the equitable property of the debtor.

If such property is not a subject of sale by the sheriff, the creditor obtains no specific lien or preference until his execution is returned unsatisfied, and he has followed up his remedy by the commencement of a suit in this court, to reach the debtor's equitable assets.[1]

When a debtor in failing circumstances assigns an unreasonable amount of property to satisfy a single creditor, it is evidence of fraud;[2] but if no more than is supposed to be sufficient to satisfy the debt is assigned, a mere hypothetical reservation of the surplus, if any there should be, to the debtor, would not render the assignment void.

In July, 1825, B. C. Burdett gave to the complainant a note for a *bona fide* debt. A judgment was obtained thereon in the Supreme Court in May, 1826, and a *fieri facias* was issued to the sheriff of New York, returnable on the 13th of the same month. The sheriff returned the execution unsatisfied. The bill in this cause was filed after the return day of the execution, but before the writ was actually returned and filed in the clerk's office. Before the commencement of the suit upon the note B. C. Burdett

January 7th

[1] *Grosvenor* v. *Allen*, 9 Paige, 74; see *Ellis* v. *Tousley, ante*, 280, n.
[2] *Butler* v. *Stoddard*, 7 Paige, 163.

1829.

Beck
v.
Burdett.

failed, and assigned all his property, consisting of goods, debts and choses in action to J. Burdett, in trust to collect the debt and sell the goods, and apply the proceeds to the payment of certain *creditors named in a schedule annexed to the assignment, and to pay the residue of the proceeds, if any, to the assignor. Goods to the value of $600 remained unsold in the hands of the assignee at the time of issuing the execution. The object of the bill was to set aside the assignment. The complainant prayed that the same might be declared fraudulent as against him, and that the goods remaining unsold might be applied in satisfaction of the judgment; and, if the same were insufficient for the purpose, that J. Burdett might be decreed to pay the balance of the judgment out of the proceeds of other property obtained under the assignment. The cause was heard on pleadings and proofs.

*C. Baldwin*, for the complainant:—The assignment from B. C. Burdett to Jacob Burdett is void, because it does not provide for all the creditors of B. C. Burdett, and because it reserves the surplus to B. C. Burdett after paying certain specified creditors. An assignment with intent to protect property from creditors is void by statute. An insolvent may prefer one creditor to another, but he cannot make an asignment, either altogether in trust for himself, or partly in trust for himself and partly for the payment of an honest creditor. If void in part, it is void in *toto*. (*Mackay* v. *Cairnes*, 5 Cowen, 547.) Any reservation by an insolvent in an assignment, in favor of himself, renders the assignment void. (2 Kent. Com. 421.) If the assignment is void in its inception, subsequent events cannot make it good; such as the property assigned being insufficient to satisfy the confidential creditors. If so, the debtor or his assignee can make a fraudulent assignment good by not collecting more than is sufficient to satisfy the preferred creditors. This would hold out a temptation to sacrifice the property, and thus violate the trust. The property in this case as-

signed, exceeded in value the debts for the security of which it was assigned. The reservation in the assignment shows that this was the belief and understanding of the parties to it. (*Hyslop* v. *Clarke*, 14 John. 458; *Austin* v. *Bell*, 20 John. 442, per Spencer, Ch. J.) A creditor is not bound to levy on property fraudulently assigned, before applying for relief in Chancery. *(*Haddan* v. *Spader*, 20 John. 554, 572; [*307¯]  73, per Platt, J.; *Donavan* v. *Finn*, Hopk. Rep. 77.) It was not necessary that the *fi. fa.* in this case should have been actually returned and filed before the filing of the bill. It was sufficient if the return day had passed, and there was no property which it could reach. (Mitf. Pl. 102, 3d Lond. ed.; 3 Atk. 200; Cooper's Eq. Pl. 149, 1st ed.; *Brinckerhoff* v. *Brown*, 4 John. Ch. R. 671; *Williams* v. *Brown*, 4 John. Ch. R. 682.) Suppose the execution was lost, then it could not have been filed. The case of *Balch* v. *Wastall*, (1 Pr. Wms. 445,) is the only one in which a *dictum* can be found that a return of the execution is necessary

*J. L. Mason* for defendants:—There was no fraud in fact in this case; and there being in the assignment no absolute reservation in favor of the assignor, there is no fraud in law. A debtor may prefer one creditor to another. If the assignment had contained no reservation whatever, and there had been a surplus, a resulting trust would have arisen in favor of the debtor. The reservation, therefore, in this assignment is mere surplusage. (*Wilkins* v. *Ferris*, 5 John. 335; *Wilder* v. *Winne*, 6 Cowen, 284; *Hendricks* v. *Robinson*, 2 John. Ch. Rep. 283.) If the security be not manifestly excessive in favor of a particular creditor, and there should happen to be a surplus, it would not vitiate the assignment if the transaction was *bona fide*. *Stevens* v. *Bell*, 6 Mass. R. 339.)

In this case the assignment was only a part of the debtor's property. The court will not presume in the absence of proof, it was of the whole property of the debtor. (*Wilkes & Fontaine* v. *Ferris*, 5 John. 335.) The creditor,

1829.

Beck
v.
Burdett.

Jacob Burdett, did not realize his debt out of the property assigned to him, which fact repels all presumption of fraud. The bill in this case was prematurely filed, it being before the actual return of the execution unsatisfied. The complainant is in all cases bound to show that he sued out execution, and pursued it to every possible extent before he filed his bill. (*Brinckerhoff* v. *Brown*, Ch. R. 671; *Williams* v. *Brown*, 4 John. Ch. R. 681; *McDermut* v. *Strong*, 4 John. Ch. R. 691; *Hadden* v. *Spader*, 20 John. 554; *Angel* v. *Draper*, 1 Vernon, 399.)

[*308]

*THE CHANCELLOR:—The defendants deny all actual fraud in relation to the assignment, and there is no evidence from which it can be inferred; therefore, the only questions of any importance in this case are as to the right of the complainant to commence proceedings here, before the execution was returned by the sheriff; and whether the assignment is void, in consequence of the reservation of the surplus to the assignor, without making any provision for the payment of the complainant's debt.[1]

There are two classes of cases where a plaintiff is permitted to come into this court for relief, after he has proceeded to judgment and execution at law without obtaining satisfaction of his debt. In one case the issuing of the execution gives to the plaintiff a lien upon the property, but he is compelled to come here for the purpose of removing some obstruction, fraudulently or inequitably interposed to prevent a sale on the execution. In the other, the plaintiff comes here to obtain satisfaction of his debt out of property

[1] It has been repeatedly held, that an assignment of part, or all the debtor's estate, providing for only *a part* of the creditors, and, without making provision for the rest, directing the assignee to pay back or re-assign to the assignor the surplus remaining after satisfying the debts provided for, is fraudulent and void. *Goodrich* v. *Downs*, 6 Hill, 438; *Strong* v. *Skinner*, 4 Barb. S. C. R. 546; *Lansing* v. *Woodworth*, 1 Sanf. Ch. 43; *Barny* v. *Griffin*, 4 id. 552; S. C., 2 Comst. 365; *Leitch* v. *Hollister*, 4 id. 211. The same principle prevails in Ohio. *Suydam* v. *Martin*, Wright Ch. R. 698.

of the defendant, which cannot be reached by execution at law. In the latter case, his right to relief here depends upon the fact of his having exhausted his legal remedies, without being able to obtain satisfaction of his judgment. In the first case, the plaintiff may come into this court for relief, immediately after he has obtained a lien upon the property by the issuing of an execution to the sheriff of the county where the same is situated; and the obstruction being removed, he may proceed to enforce the execution by a sale of the property, although an actual levy is probably necessary to enable him to hold the property against other execution creditors on *bona fide* purchasers. *Angel* v. *Draper*, (1 Vern. 399,) and *Shirley* v. *Watts*, (3 Atk. 200,) are cases of this description. In the first, a fraudulent assignment was interposed to prevent a sale of the defendant's property on execution; and in the last case it became necessary to redeem a term for years in a leasehold property, from a lien of a prior mortgage. In both these cases the plaintiffs were allowed to come into equity for relief, before the executions were returned unsatisfied. *McDermut* v. *Strong*, (4 John. Ch. R. 687,) belongs to the other class of cases; for although an attempt was made to *levy the execution upon the defendant's interest in the vessel assigned, it is clear he had no interest which was a proper subject of seizure and sale on the execution. The issuing of an execution, or even a formal levy, can create no lien upon a chose in action, or a mere equitable interest in personal property, which is not liable to be sold on execution. In such cases, the actual return of the execution unsatisfied, is necessary to give this court jurisdiction to decree satisfaction out of the equitable property of the defendant. Such is the construction recently adopted by the legislature in such cases. (R. S. part 3, ch. 1, tit. 2, sec. 38.) And a similar principle is adopted in that part of the Revised Statutes which enables creditors to reach the equitable interest of persons holding lands under contracts for the purchase thereof. (R. S. part 2, ch. 1, tit. 4, sec. 4.) In all

[*309]

1829.

Beck
v.
Burdett.

these cases, where the property is not liable to an execution at law, the plaintiff obtains no lien upon the property or fund, by the issuing or return of the execution. But it is the filing of the bill in equity, after the return of the execution at law, which gives to the plaintiff a specific lien. (Per Lord Hardwicke in *Edgell* v. *Haywood*, 3 Atk. Rep. 357.)

The bill in this case contains the proper allegation that the execution had been returned unsatisfied. That fact is denied by the answer; and the evidence in the case supports that denial. The bill, therefore, was prematurely filed, and no relief can be granted thereon, except as to the goods which remained unsold at the time the execution issued. If the assignment was fraudulent, they are liable to be seized and sold on the execution. J. Burdett has since sold those goods; and if he improperly covered them from a levy and sale by the sheriff, he must account to the plaintiff for their value. It, therefore, becomes necessary for the court to examine the other question in this cause.

If a debtor in failing circumstances makes an assignment of his property for the benefit of part of his creditors only, and the value of the property assigned is more than the parties could have reasonably supposed necessary to satisfy the claims of those creditors, fraud may be inferred from that

[*310]

*circumstance alone, unless a satisfactory excuse is shown for the transfer of the excess. But in this case it was, at the time of the assignment, and still is doubtful, whether the property assigned was sufficient to satisfy the claims of the creditors for whose benefit the assignment was made. Their debts were rising of $26,000, and the whole nominal amount of property and demands assigned, including $21,000 of outstanding claims, is short of $34,000. It was therefore not probable there would be any excess, after making due allowance for bad debts, and deducting the expenses of collection, and of executing the trust.

Does then a mere hypothetical reservation of the surplus, if any there should be, to the assignor, vitiate the assignment? It certainly does not alter the legal liability of the

assignee, because, without that provision, he would in equity be compelled to account for the surplus. In *Wilkes & Fontaine* v. *Ferris*, (5 John. Rep. 335,) it was settled, that an implied reservation of the residue to the assignor did not render the assignment void; and in *Stevens and others* v. *Bell*, (6 Mass. Rep. 339,) and in *Passmore* v. *Eldridge*, (12 Serg. & Rawle, 198,) although express reservations of the surplus were made to the assignors, the assignments were sustained.

The case of *Mackie* v. *Cairns*, (5 Cowen, 547,) establishes the principle that an insolvent cannot legally make a provision for himself or family, even for a limited period, out of the property which belongs to his creditors; and that such a provision, contained in a general assignment of his property, rendered the assignment void as against creditors who had not assented thereto. But on a careful review of the cases on this subject, I am satisfied that the assignment complained of in this case was a valid instrument, and that it does not come within the principle of the decision in *Mackie* v. *Cairns*.

The bill in this cause being prematurely filed, the complainant is not in this suit entitled to an account and satisfaction of his debt, out of the surplus of the assigned property, if any there should be. His bill must therefore be dismissed with costs.