SANDERSON ROBERT *vs.* EDWARD F. HODGES and WILLIAM HENRY FULLER.

1. A court of equity has the power to aid a judgment creditor to reach the property of his debtor, either by removing fraudulent judgments or conveyances which obstruct the plaintiff's remedy under the judgment, or by appropriating in satisfaction thereof, rights or equitable interests of the defendant, which are not the subject of legal execution.

2. If a creditor seeks the aid of this court against the *real estate* of his debtor, he must show a *judgment at law* creating a lien on such estate; if he seeks aid in regard to the *personal estate*, he must show an *execution* giving him a legal preference or lien on the goods and chattels.

3. To reach an *equitable* interest of the debtor, the creditor must first have taken out execution at law, and have required it to be levied or returned, so as to show a failure of his remedy at law. Equity will only grant its aid to enforce legal process, when it appears that the legal remedy of the complainant is exhausted.

4. A creditor *at large*, or *before judgment* having no specific lien on his

Robert *v.* Hodges and Fuller.

debtor's property, is not entitled to the interference of equity, by injunction, to prevent the debtor from disposing of his property in fraud of his creditor.

5. An *attaching* creditor, having a lien upon the property of his debtor by authority of the statute, prior to the recovery of judgment, is entitled to the aid of a court of equity to enforce his legal right.

6. If the court, where judgment is recovered, have jurisdiction of the person of the defendant, and of the subject matter of the suit, its conclusiveness cannot be questioned in the forum of another state where it is sought to be enforced.

7. A trust deed by the husband for the benefit of the wife, purporting to be given to secure certain funds received from the wife, but where no such funds were actually received by the husband, is fraudulent and void as against creditors.

8. The filing of exceptions to an answer, constitutes no technical objection to the dissolution of an injunction. The court will look into them merely to ascertain whether they relate to the points of the bill upon which the injunction rests.

The complainant is an attaching creditor of Fuller, one of the defendants. The bill is filed for the benefit of himself, and of such of the other creditors of Fuller as shall come in under the attachment, and as shall contribute to the expenses of this suit. The material allegations of the bill are, that on the sixth of March, 1863, Fuller was indebted to the complainant in about the sum of $22,140, upon judgments recovered in the Court of Common Pleas of the county of Hamilton, in the state of Ohio. That the defendant being so indebted, and being a resident of the state of Massachusetts, the complainant sued out of the Circuit Court of the county of Hudson, a writ of attachment against his estate, by virtue of which the sheriff attached fifteen lots of land lying in Jersey City, the property of the defendant. That the defendant became seized of the said land in fee in 1854, and continued in possession thereof up till the time of filing the bill of complaint in this cause; but in order to conceal his property, and to defraud his creditors, by a deed dated on the first of January, 1858, he conveyed the said land to Edward F. Hodges, of Massachusetts, his co-defendant, without any consideration being paid therefor, and that by

reason of the said conveyance, the complainant is unable effectually to obtain the benefit of the said attachment, or to enforce the same against the lands attached. The bill prays, among other things, that the conveyance to Hodges may be declared fraudulent and void, as against the creditors of Fuller, and that the defendants may be restrained by injunction from aliening or encumbering the said land. Upon filing the bill a temporary injunction was issued pursuant to its prayer. The defendants having answered the bill, now ask a dissolution of the injunction :—first, on the ground that there is no equity in the bill; and secondly, because the equity of the bill, if any there be, is fully denied by the answer.

*Jackson* and *Teese*, for the defendants, in support of the motion.

*Gilchrist*, for complainant, contra.

Cases cited in support of the motion. *Young* v. *Frier*, 1 *Stockt.* 465 ; *Hunt* v. *Field. Ibid.* 36 ; *Melville* v. *Brown*, 1 *Harr.* 363 ; *Martin* v. *Michael*, 23 *Miss.* 50 ; *Ex parte Foster*, 2 *Story* 131 ; *Reeves* v. *Johnson*, 7 *Halst. R.* 29 ; *Thompson* v. *Eastburn*, 1 *Harr.* 100 ; *Shinn* v. *Zimmermann*, 3 *Zab.* 154 ; *Nix. Dig.* 45, § 66 ; *Edgar* v. *Clevenger*, 1 *Green's Ch. R.* 258 ; *S. C.* 2 *Ibid.* 259 ; 2 *Story's Eq. Jur.*, § 1216, *b ; Neate* v. *Marlborough*, 3 *Mylne & C.* 407, 415 ; *Pullinger* v. *Van Emburgh*, 1 *Harr.* 460 ; *Peacock's heirs* v. *Wildes*, 3 *Halst. R.* 179 ; *N. A. Ins. Co.* v. *Graham*, 5 *Sandf. S. C. R.* 204 ; *Garwood* v. *Garwood*, 4 *Halst. R.* 193 ; *Dunham* v. *Cox*, 2 *Stockt.* 437.

Cases cited contra. *Hunt* v. *Field*, 1 *Stockt.* 36 ; *Williams* v. *Michenor*, 3 *Stockt.* 524; *Falconer* v. *Freeman*, 4 *Sandf. Ch. R.* 565 ; *Vreeland* v. *Bruen*, 1 *Zab.* 214; *Mohawk Bank* v. *Atwater*, 2 *Paige* 54 ; 1 *Stockt.* 465 ; *Halsted* v. *Davison*, 2 *Stockt.* 290 ; *Doughty* v. *King, Ibid.*

Robert *v.* Hodges and Fuller.

396; *Dunham* v. *Cox, Ibid.* 437; *Edgar* v. *Clevenger,* 1 *Green's Ch. R.* 258.

THE CHANCELLOR. The question presented by the first ground of objection is, whether an attaching creditor, before judgment, is entitled to the aid of a court of equity, in relieving him from the operation of fraudulent judgments or conveyances which obstruct the effectual operation of the attachment. This point has been more than once decided in this court, after argument and upon full consideration. *Hunt* v. *Field,* 1 *Stockt.* 36; *Williams* v. *Michener,* 3 *Stockt.* 520.

The principle was adopted as early as the case of *Quackenbush* v. *Van Blarcom,* decided by Chancellor Pennington, cited in 1 *Stockt.* 42, and has been, it is believed, since that time uniformly recognized and acted on. It was intimated upon the argument, that a principle thus recognized and adopted in practice, ought not to be disturbed upon a mere motion to dissolve an injunction. I still think that it ought not to be regarded as an open question, and that this objection might properly be disposed of by the mere force of authority. It is better, even in doubtful matters, that the doctrine of *stare decisis* should be applied, and that justice should be administered upon fixed and settled principles, and not upon the varying or conflicting opinions of successive judges. If, therefore, I regarded the principle as not free from doubt, I should be unwilling to disturb it, either upon this motion, or upon demurrer. But as the point has been twice urged upon the attention of the court, I have examined the question with more care than I should have otherwise deemed necessary, and will briefly state the grounds upon which the doctrine of the court rests.

It is a familiar and unquestioned doctrine of equity, that the court has power to aid a *judgment* creditor to reach the property of his debtor, either by removing fraudulent judgments or conveyances which obstruct or defeat the plaintiff's remedy under the judgment, or by appropriating

in satisfaction of the judgment, rights or equitable interests of the defendant, which are not the subject of legal execution. *Mitford's Eq. Pl., by Jeremy,* 126; *Cooper's Eq. Pl.* 148.

If he seeks the aid of the court against the real estate of his debtor, he must show a judgment at law creating a lien on such estate; and if he seeks aid in regard to the personal estate, he must show, not only a judgment but also an execution, giving him a legal preference or lien on the goods and chattels. *Edgar* v. *Clevenger,* 1 *Green's Ch. R.* 258; *Swayze* v. *Swayze,* 1 *Stockt.* 273; *Young* v. *Frier, Ibid.* 465; *Wiggins* v. *Armstrong,* 2 *Johns. Ch. R.* 144; *Hendricks* v. *Robinson, Ibid.* 296; *Brinkerhoff* v. *Brown,* 4 *Johns. Ch. R.* 671, 678; *Williams* v. *Brown, Ibid.* 682; *Clarkson v. Depeyster,* 3 *Paige* 320; *Beck* v. *Burdett,* 1 *Paige* 305; *Harrison* v. *Battle,* 1 *Dev. Eq. R.* 537.

So if a judgment creditor seeks the aid of a court of equity to reach the equitable interest of his debtor in lands, or goods or chattels, he must first have taken out execution at law, and required it to be levied or returned, so as thereby to show a failure of his remedy at law. Equity will not, as of course, grant its aid to enforce legal process. It must first appear that the legal remedy of the complainant is exhausted. *Edgell* v. *Haywood,* 3 *Atk.* 352; *Clarkson v. Depeyster,* 3 *Paige* 320; *Cuyler* v. *Moreland,* 6 *Paige* 273.

It results as a necessary consequence from these principles, that a creditor at large, or before judgment, having no specific lien on his debtor's property, is not entitled to the interference of equity by injunction, to prevent the debtor from disposing of his property in fraud of his creditor. *Angell* v. *Draper,* 1 *Vernon* 399; *Shirley* v. *Watts,* 3 *Atk.* 200; *Wiggins* v. *Armstrong,* 2 *Johns. Ch. R.* 144; *Hendricks* v. *Robinson, Ibid.* 296; *Mitford's Eq. Pl., by Jeremy,* 125; *Cooper's Eq. Pl.* 149.

Under the English statute the creditor acquires no lien upon the land of his debtor, legal or equitable, by virtue of his judgment. The judgment creditor is entitled by the

statute to a writ of elegit, by virtue of which one half of the defendant's freehold lands are delivered to him to hold, till out of the rents and profits the debt is satisfied. The title he acquires is derived from the statute. He becomes " tenant by elegit," by virtue of the writ. His interest in the land is an "estate by elegit." 3 *Bl. Com.* 418; 2 *Ibid.* 161.

The effect of the proceeding under the writ is to give the creditor a legal title which he may enforce at law by ejectment. Unless the creditor sues out the writ, he neither acquires a title to, or lien upon the land, nor can he be said to have exhausted his remedy at law. Upon these grounds it has been held that a court of equity in England will not interfere to aid a judgment creditor to reach his debtor's equitable interest in real estate, unless he first sue out a writ of elegit. *Neate* v. *The Duke of Marlborough*, 9 *Sim.* 60; 3 *Mylne & Craig* 407.

Upon the authority of this decision of Lord Cottenham, in *Neate* v. *The Duke of Marlborough*, it was held by the Superior Court of New York, that a judgment creditor cannot file a bill to set aside conveyances which are alleged to be an obstruction to an execution, until such execution has been actually issued. *North Amer. Ins. Co.* v. *Graham*, 5 *Sandf. S. C. R.* 197.

The latter decision proceeds upon the assumption that there is a perfect analogy between an *elegit* in England, and a *fi. fa.* in the state of New York. The analogy certainly does not hold between the elegit in England, and the *fi. fa.* under the laws of this state, and the decision cannot be safely regarded as authority here.

But all the cases proceed upon the principle that the judgment creditor, in order to be entitled to the aid of a court of equity in enforcing his remedy by removing obstructions from his path, must have acquired title to, or a lien upon, the specific thing against which he seeks to enforce his judgment. He must complete his title at law before coming into equity. Unless he has established his title to, or lien upon, the pro-

perty of his debtor, he has no right to interfere with his debtor's disposition of it. Such lien the creditor does acquire under our law by the service of the writ of attachment. The law recognizes the claim of the attaching creditor, after it has been verified by affidavit as prescribed by the statute, as a subsisting debt, for the purpose of creating the lien. Having that lien by authority of the statute, prior to the recovery of judgment, he is entitled to the aid of a court of equity to enforce his legal right. The statute, for various purposes, recognizes and enforces this right, although it may be that the claim may eventually prove to be unfounded.

The objection to the interference of a court of equity, that the claim of the attaching creditor is not ascertained, if it be entitled to any consideration, can have no application in the present case, for the plaintiff's claims against the defendant have, in fact, been established by judgment. The fact that the judgment was recovered in another state, does not impair the conclusiveness of the judgment as to the amount due. If the court, where the judgment is recovered, have jurisdiction of the person of the defendant, and of the subject matter of the suit, its conclusiveness cannot be questioned in the forum of another state where it is sought to be enforced. *Moulin* v. *Insurance Co.*, 4 *Zab.* 222.

The better opinion is, that a foreign judgment is not examinable in the courts of Westminster Hall. 2 *Story's Eq. Jur.*, § 1576.

It is further urged that the injunction should be dissolved, because the equity of the bill is fully denied by the answer.

The bill charges that the lands attached are, in fact, the property of Fuller, and that they were conveyed away without consideration, to defraud his creditors. The material facts disclosed by the pleadings are, that in January, 1857, the complainant was a judgment creditor of Fuller, the defendant, to an amount exceeding $20,000. That Fuller then was, and since 1854 had been the owner in fee, and in possession of the lands attached. That his title to said lands was kept secret, and that the deed was not recorded until the

2 c *

sixteenth of May, 1857, after he had parted with the legal title, and was sent to the clerk's office to be recorded at the same time with the deed from Fuller to Hodges. That by deed dated on the first of January, 1857, two days after the recovery of the complainant's first judgment, and twenty days before the recovery of his second judgment, Fuller conveyed the said lands to Hodges, an attorney-at-law, and the professional adviser of Fuller, without any valuable consideration whatever being paid therefor, although the deed expresses a consideration of $22,000. That at the date of the conveyance, Hodges executed to Fuller a mortgage for $11,050, which, together with a mortgage executed by Fuller to his grantors for $10,950, and which continued a subsisting encumbrance when the land was conveyed to Hodges, would make the entire consideration of $22,000, expressed in said deed. That the mortgage from Hodges to Fuller for $11,050, was cancelled on the fourth of September, 1862, although Hodges never paid the said mortgage or any part thereof.

These facts are not denied by the defendants in their answers, and, unexplained, they fully sustain the charge of fraud made by the bill.

The defence is, that the conveyance made by Fuller to Hodges was in fact made in trust for the wife of Fuller, and as a security for money which he had received, or was about to receive, being the avails of lands owned by her in or near Chicago. The case, as presented by the separate answers of the defendants, is open to exception.

It does not appear that Fuller, prior to the service of the writ of attachment, had received any portion of his wife's funds. This is the corner stone of the defence, upon which the entire structure rests. For if the husband did not receive the funds of the wife, even if the conveyance was made for her benefit, it was fraudulent and void as against creditors. Hodges, to whom the conveyance was made, admits that he does not know of his own knowledge, that Fuller received funds belonging to his wife. Upon this point he

answers, solely upon information and belief, that the husband received about the sum of $10,000. Fuller, the husband, by his answer, sworn to on the twenty-seventh of June, 1863, says that he *hath received* funds belonging to his wife, avails of the sale of her real estate, to the sum of *at least* ten thousand dollars. This may be true, and yet every dollar of the money may have been received after the bill in this cause was filed. The answer is silent as to the *time* when the money was advanced. Hodges, in his answer, states that at the time when the mortgage was made by him, he was informed and then believed, and still believes that Fuller received of his wife's money the sum of about ten thousand dollars. This is clearly a mistake, and is in direct conflict with the answer of Fuller, and with previous statements in Hodges' own answer. Fuller, in his answer, states that his wife was about to receive certain funds arising from the sale of a portion of her lands, which she was willing should be used by Fuller, and that thereupon, on consultation, it was agreed that Hodges should take the title and give his notes and mortgage, which should be held as *security for the said funds, as the same should be received by Fuller.* Hodges himself says, that after conference between himself and Fuller, he proposed that the lands should be conveyed, and a mortgage given for the purchase money, which mortgage, and the notes secured thereby, should be held in trust for the wife when the said money should be taken by Fuller. This proposition was acted upon, and, at the request of Fuller, Hodges took the conveyance, and gave the notes and mortgage to secure the same. The statement, therefore, of Hodges, that at the time the mortgage was given he was informed, and then believed that Fuller had received of his wife's money the sum of about ten thousand dollars, must be erroneous. It is true, that afterwards the notes and mortgage were cancelled, and an arrangement made by which Hodges acted as the owner of the land, as trustee of Mrs. Fuller. But this was not the original arrangement. The trustee of Mrs. Fuller, if she was in fact the equitable owner,

would not have given a mortgage on the land to be held in trust for herself. But she could not have been the equitable owner, for the trust under the deed, if any such was intended to be created, was utterly void, not having been manifested in writing. The answers do not show satisfactorily that ten thousand dollars, or any other sum, was advanced by the wife out of her funds, for the use of her husband, either at the time the mortgage was given, or at any other time prior to the service of the writ of attachment.

There are other circumstances connected with the transaction, as disclosed by the answers, which are open to grave observation. As already intimated, there was no written declaration or manifestation of the trust. The trust, if any, was a secret one, and so remained for years after the delivery of the title. The deed of conveyance from Fuller to Hodges is absolute upon its face. The land was purchased by Fuller of Coles, in 1854, for $14,600. It was conveyed by Fuller to Hodges for the alleged consideration of $22,000, subject to a mortgage of $10,950, given by Fuller to Coles, which constituted a part of the price, and which Hodges personally assumed to pay. For the balance of the consideration, $11,050, Hodges gave his two notes, at three and six years (whether with or without interest does not appear), secured by a mortgage upon the land. The notes and mortgage are given, not to the wife, for whose security they are alleged to have been given, nor to the trustee of the wife, but are made and delivered to the husband, who was to be the debtor of the wife. The whole arrangement was made by the procurement of the husband, between himself and his intimate friend and legal adviser, who became the grantee. Neither the wife herself, nor the trustee of the wife, appears to have participated in any degree in the arrangement, or to have been consulted concerning it. All this is perfectly natural and consistent, if the whole transaction was designed as a cover for the husband's property, but it seems in the highest degree improbable, that such a transaction should, under the advice of legal counsel, have been designed as a

*bona fide* security for the separate estate of the wife, advanced by her or her trustee for the use of her husband. Aside from the extraordinary terms of the arrangement, viewed as a security for the debt of the husband, the utter inadequacy of the security for the purpose for which it is alleged to have been designed, is enough to cast upon the whole transaction grave suspicion, and to entitle the complainant to the benefit of a full investigation.

The answer of Fuller, moreover, admits that the mortgage given to him by Hodges, in September, 1862, nearly six years after its execution, was caused to be cancelled of record by himself, by direction of Hodges. We have, then, the admitted fact that this mortgage remained in the hands of the husband, under his legal control, nearly six years after its execution, and after its pretended assignment and delivery to the trustee of the wife as a security for his debt. The answer alleges, indeed, that it had never been assigned by *recorded* writing, though it was in reality assigned and delivered to Richard F. Fuller, the trustee of the wife, with the notes, on the day of its date. But was it assigned by any writing, recorded or unrecorded? Was there a legal, valid transfer, either of the notes or of the mortgage, to Richard F. Fuller, (who is admitted to be a brother of the defendant) in trust for the wife? If, in reality, he held the mortgage for the wife's benefit, why was it left in the possession, and under the control of the husband?

The subsequent contracts, alleged in the answers to have been made in regard to the land by Hodges, with the assent of the wife, do not, in my judgment, strengthen the defendant's case. They would seem to enure to the benefit of the husband rather than of the wife, and to countenance the charge that the name of the wife is used as a mere cover for the fraud of the husband. But it is unnecessary to pursue the subject further. It is not necessary, nor is it intended, to express any opinion upon the real merits of the case as it may be made to appear upon the evidence. The wife may be a *bona fide* creditor of the husband, and may be entitled

to protection. It is enough to say that as the case now stands, the equity of the bill is not fully answered. The complainant is entitled to a full disclosure and thorough investigation of the alleged equitable interest of the wife, and of those claiming under her.

The answers do not contain such a full denial of the equity of the complainant's bill, as entitles the defendants to a dissolution of the injunction. The filing of exceptions, by our practice, constitutes no technical objection to the dissolution of the injunction. The court will look into them, merely to ascertain whether they relate to the points of the bill upon which the injunction rests. *Doe* v. *Roe*, 1 *Hopk.* 276; 1 *Hoffman's Ch. Pr.* 357, *note* 1; 1 *Barb. Ch. Pr.* 642.

The motion is denied with costs.