TRUMBO, HINSON & CO. v. HAMEL & CO.

An assignment by a partnership of partnership assets for the payment of partnership debts, providing that the proceeds should be applied primarily to payment of such creditors as would accept their *pro rata* share in full discharge of their demands, and next to the payment of all creditors ratably, the surplus to be returned to the assignors, is not fraudulent and void neither upon the ground that it is only a partial assignment, nor because it provides for a return of the surplus to the assignors, to whom such surplus, if any, was properly returnable for an adjustment of the equities of the copartners and for the payment of individual debts.

Before KERSHAW, J., Darlington, November, 1887.

The opinion of the court sufficiently states the case.

*Messrs. Boyd & Brown*, for defendant.

*Messrs. Smythe & Lee* and *Ward & Woods*, contra.

November 27, 1888. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   Charles Hamel and R. L. Farrell were doing business as "Charles Hamel & Co." at the town of Timmonsville, in Darlington County. They became embarrassed, and on December 30, 1886, they made an assignment of their partnership property for the benefit of their partnership creditors, to David H. Traxler as assignee, who was, at the meeting of said creditors, elected their agent.   The assignment made no mention of any individual separate property of the members of the firm. It directed the assignee to sell the property and distribute the proceeds as follows, after paying and discharging all just and reasonable expenses: "(2) To pay and discharge in full, &c., if the residue of such proceeds is sufficient for that purpose (but if not, then ratably and in proportion without any preference whatever), the claims of all creditors of the said parties of the first part, who shall, on a day named," accept in writing the terms of this assignment; and in consideration thereof execute a release of their claim against the said parties, &c.   (3) And then and next, to pay and discharge in full, with proper interest thereon, if the residue of such proceeds is sufficient (but ratably and in proportion, if it be not sufficient), the claims of all and every other creditors of the said parties of the first part, without any priority or preference whatever.   (4) And if, after the payment of each and all the debts, claims, and liabilities due or to grow due by the said parties of the first part to any and all persons whomsoever, in full and with all interest thereon, there be any remainder or residue of the said proceeds, then to pay over and return the same to said parties," &c.

The assignee accepted the trust, and sold the assigned property, which was all personalty; and as none of the creditors signed off, but chose to take under the provision of the assignment in paragraph (3), he was preparing to distribute the proceeds ratably among all the partnership creditors when this action was commenced.   The plaintiffs, creditors of the firm of Charles Hamel & Co., on or about March 15, 1887, after the sale of the assigned property, recovered judgment against the defendants for $2,437.03, which was duly entered and execution issued thereon in Darlington and Colleton Counties—Hamel living in

the first named and Farrell in the latter.  On October 11, 1887, the plaintiffs instituted this action to set aside the assignment as null and void as to plaintiffs, and praying that a sufficient amount of the property sold, or the proceeds of such property already sold, may be applied to the payment of plaintiffs' claim ; for injunction, &c.  Application was made to Judge Kershaw for an injunction restraining the defendants from disposing of or paying out any portion of the proceeds of sale of the assigned property, &c., &c.  Upon this application affidavits were submitted, as follows :

David H. Traxler, assignee, made affidavit, "that although the time fixed in the assignment was the first day of April, 1887, for creditors to come in and accept the terms of said assignment and execute releases, no creditor has accepted the terms and manifested his willingness to execute a release in accordance with the terms of said assignment.  That he is now ready, in accordance with the directions of said assignment, to pay all creditors ratably without the requirement of a release.  Deponent further says that the assets of the said assigned estate consists entirely of personal property."

Charles Hamel, one of the partners, made affidavit, "that the firm being insolvent, deponent and his partner executed an assignment of the entire copartnership property for the benefit of all the copartnership creditors, in good faith and with no other intent or purpose than to secure a fair and just distribution of the copartnership assets among the copartnership debts.  At and before the time of the said assignment, deponent owned no property outside of his interest in the said firm, with the exception of a house and lot in the town of Timmonsville, which did not cost deponent exceeding $460, and would not, at the time of said assignment, nor would it now, sell for exceeding $700," &c.

R. L. Farrell, the other partner, made affidavit, "that at that time it became apparent that the firm was insolvent, and this deponent and his partner executed an assignment of the entire copartnership property for the benefit of all the copartnership creditors, in good faith and with no other intent or purpose than to secure a fair and just distribution of the copartnership assets among the copartnership creditors ; that this deponent was then carrying on

a distinct and separate business at Ross's Station, and all his separate property, outside of the partnership of Charles Hamel & Co., both real and personal, was under mortgage to his individual creditors for an amount equal to its whole value; that the personal property has been since sold under said mortgage, and the same is still an existing and unsatisfied *lien* upon his real estate; that in making the said assignment this deponent had no idea that it was incumbent on him to include therein his individual property, and this deponent had no other purpose in executing said deed of assignment than to do the very best possible for the creditors of the said firm of Charles Hamel & Co. * * * *; that he never realized as much as one cent of money in any way whatever from the firm of Charles Hamel & Co. during the whole of its existence. All my property, both real and personal, outside of merchandise, was bought and paid for before the said firm ever existed, and was liable for my own debts for my individual business, carried on independent of the business of Charles Hamel & Co. Besides this, the said Charles Hamel & Co. owe me large sums of money loaned for the special purpose of paying its creditors."

A. M. Lee, Esq., one of the attorneys for plaintiffs, made affidavit, "that R. L. Farrell, the partner in Charles Hamel & Co., was, at the time of the assignment now sought to be set aside in the above action, a copartner in the firm of R. L. Farrell & Co., composed of R. L. Farrell and O. H. Carroll. The said firm was then doing a considerable business at Ross's Station, in Colleton County; and that they so continued to do business until some time in February, 1887, when a sale of their assets, real and personal, was made by a firm of merchants, Pittman Bros., under a mortgage, amounting to some $8,000, which the said Pittman Bros. claimed had been given them by the said R. L. Farrell and O. H. Carroll. All which will fully appear on reference to the record offices in the County of Colleton and other proper sources of information. And this deponent therefore states that the said R. L. Farrell, at the time of the assignment by Charles Hamel & Co., did have other property than that owned by him in the latter firm," &c.

Upon the pleadings and affidavits, the Circuit Judge held as

follows : "The assignment in question only purports upon its face to convey to the assignee the assets of the firm of Charles Hamel & Co., not alluding throughout the instrument to any intention to include therein the individual and separate property of the two members of the firm. The assignment is therefore a partial one, and exacts, from the creditors accepting its terms, releases in full of their several debts. There can be no doubt, both from principle and authority, that a partial assignment exacting releases from accepting creditors is void. All the assets, whether individual or held jointly as copartners, are liable for the debts of the firm. And if an assignment by partners does not include individual assets, something is withheld from the creditors to which they would be entitled should the assets of the firm be insufficient to pay its debts. This will render the deed void where a release is demanded as a condition of payment from accepting creditors. The fraud consists in withholding from the creditors a portion of the property of the debtors liable for their debts, and any attempt by the debtors to procure a discharge from their debts without a full disclosure of their property, both partnership and individual, to which the creditors would have access should they refuse to accept the terms of the assignment, and by withholding it secure an advantage to the debtors at the expense of the creditors, as in this case, would render the deed void. Nor can it make any difference whether the property withheld be individual or copartnership property, if it be subject to the claims of creditors ; in either case it is a partial assignment, and *void ab initio.* And if void when made, the deed will remain void to the end, though no injury to the creditors may be shown to have occurred," &c. And the judge set aside the deed as absolutely void, and ordered the assignee, "out of the funds in his hands to pay the whole judgment of the plaintiffs ($2,437.03), with interest and costs, after retaining such proper expenses as have been incurred in the administration of the said assigned estate," &c.

From this decree both parties appealed. The plaintiffs, because his honor erred in admitting the affidavits of D. H. Traxler, Charles Hamel, and R. L. Farrell to be read on the motion for injunction ; and because his honor erred in allowing

the assignee to deduct from the funds in his hands the expenses incurred in the administration of the assigned estate, his commissions as assignee and agent, and his expenses incurred in resisting the motion for injunction, &c.

*Defendants' Grounds of Appeal.*—I. That his honor erred in holding the assignment in question invalid and void *ab initio.* II. That his honor erred in holding it to be established law in this State, that the exaction of release in a partial assignment renders the assignment void, even where there has been no fraudulent intention and no deception, or attempt at deception, or other fraudulent act. III. That an assignment by a firm of the entire partnership assets is not such a partial assignment as comes within the rule, held to be established law by his honor, and it was error not to have so held. IV. That his honor erred in holding the assignment in question invalid, it appearing that no creditor had released, that the time for such release had expired, and that no creditor had acquired rights that could be affected by sustaining the assignment. V. That section 2014 of the General Statutes is inconsistent with, and abrogates, by implication, the rule as to the execution of releases in the case of a partial assignment, and it was error in his honor not so to hold. VI. That it was error in his honor to direct the payment of the plaintiffs' claim in full out of the assigned estate, it being submitted that under the ruling of his honor, as to the validity of the assignment, the other creditors should have been called in and the fund equitably distributed, &c.

The Circuit Judge did not hold the assignment void for actual fraud, but upon the ground that on its face it was a "partial assignment" and "demanded releases, as a condition of payment, from accepting creditors." It does not strike us that it is exactly accurate to say that the assignment of Charles Hamel & Co. purported to be "a general assignment for the benefit of creditors," while, in fact, it was "a partial assignment," for the reason that it did not include the individual property of the two copartners. It did not purport to include individual property or to provide for individual debts, and it would seem that in strictness it should be considered more as a special and "limited" than as a "general assignment." We are not at all satisfied that, as a fact, either

of the partners here owned individual property which could be made available in paying the partnership debts. But let that pass. A copartnership is a distinct entity, entirely separate from that of any of its members; and we know of no reason why it may not assign its property for the payment of its debts without including the individual property of the different partners. The assignment here avowed its purpose, and was openly made by partners of partnership property and for the payment of partnership debts. See *Bump Fraud. Conv.*, page 343. There was certainly no concealment as to what property was included, as in the case of *LePrince* v. *Guillemot* (1 Rich. Eq., 218), where the judgment was placed on the ground of actual fraud, that there was a "partial surrender, with a deceitful coloring, tending to the belief that the whole was given up."

An assignment by partners, openly made, of partnership assets for the payment of partnership debts, is not, as we understand it, fraudulent and void, only for being limited to partnership property. It is well settled that the partnership creditors are exclusively entitled to the partnership assets, and therefore it was not a fraudulent preference to direct the assets paid to them, which was, as far as it went, in exact conformity to the law. It is true, that in case the partnership assets are insufficient to pay the partnership creditors in full, they may come in and share equally with the individual creditors in the individual property of the partners. *Hutzler Bros.* v. *Phillips*, 26 S. C., 136. But we do not think that this circumstance could make it necessary for the partners to include in their assignment individual property, if any, upon pain of having it set aside as fraudulent and void on it face. If there was individual property available, as claimed, the assignment in no way interfered with it, or "hindered and delayed the creditors," but left it precisely as it stood before, just as liable to creditors now as it ever was. The omission to include the individual property of the partners in the assignment was certainly not sufficient alone to avoid it. See *Gadsden* v. *Carson*, 9 Rich. Eq., 252; 70 A. D., 207; *Weisenfeld, Stern & Co.* v. *Stevens & Cureton*, 15 S. C., 554; *Bump Fraud. Conv.*, 347.

But it is urged that the combination of two things, each in

itself lawful, may constitute fraud; and that there is in this case that additional something, which, in connection with the partial character of the assignment, makes it fraudulent and void upon its face. The Circuit Judge construed the assignment as offering only partnership assets, while it "demanded a release as a condition of payment from accepting creditors. The fraud (he said) consists in withholding from the creditors a portion of the property of the debtor liable for their debts." Keeping in mind that it purported to be no more than a partnership assignment, and withheld from the creditors none of the partnership property, we cannot quite concur in this construction. The assignment was, in some respects, inartificially drawn; but we think that, taking all of its parts together and considering its whole scope and tenor, the meaning is sufficiently clear that the whole proceeds of sale were to go to the partnership debts until they were paid in full, but if insufficient for that purpose, then ratably without any release whatever. It is true that in paragraph No. 2 there is a direction to pay creditors who should present their demands by a day named and release. But immediately after, in paragraph 3, there is another distinct provision in these words: "And then and next, to pay and discharge in full, if the residue of said funds is sufficient (but ratably and in proportion, if they be not sufficient), the claim of all and every other creditors of the said parties of the first part, without any priority or preference whatever."

Now, taking these provisions together, was it a surrender of the property "on condition that the creditors should release"? The suggestion as to releases was made, but there was no compulsion to comply with it. Acceptance in that form was certainly not made a condition to participation in the assets; but, on the contrary, as it seems to us, the option was given to the creditors to come in, after the time indicated for releases, and take their *pro rata* shares without releasing anything. Mr. Bump, page 358, says: "The onus is upon the creditor who assails an assignment to show that it is in plain violation of the law. It is a universal rule in the construction of all deeds, that fraud is never to be presumed. * * * It is not by selecting isolated words inadvertently used, and giving them their most unfavorable

construction, that fraud is to be imputed.   The whole tenor of
the instrument is to be taken into view, in pronouncing upon its
general character," &c.    It may not be unworthy of remark that
in the practical administration of the assigned estate, the parties
themselves put this construction upon the assignment considered
as a whole.    None of the creditors came in at the time indicated,
when releases could be given; but, under the alternative provi-
sion, the assets were about being equitably distributed among all
the creditors when this action was commenced.

We think this case is clearly distinguishable from those cited
in support of the Circuit decree, which seems to allow no force
to the fact that this was a "partnership," as distinguished from
an ordinary "partial assignment."   In *LePrince* v. *Guillemot,*
*supra,* an assignment which exacted releases was set aside, on the
ground that the concealment of extra-territorial property was a
fraud in the assignor.   In *Jacot* v. *Corbett* (Chev. Eq., 71), the
assignment was set aside, upon the ground that it contained a
positive requirement that the creditors should release "upon the
payment to them of a *pro rata* not to exceed forty cents in the
dollar; the surplus, if any, to be returned to the debtor."   In
*Claflin & Co.* v. *Iseman* (23 S. C., 417), the assignment was set
aside upon the ground that it was an assignment without alterna-
tive provision that the creditors should release as a condition of
payment; and, without making any provision for non-accepting
creditors, required that "after the payment of all the creditors
who accept and release, the balance should be returned to the
assignor."   While in the case before us, distinct provision was
made for non-accepting creditors, and in no event was any part
·of the assigned estate to be returned to the assignor until "after
the payment of each and all the debts, claims, and liabilities, due
or to grow due by the said parties of the first part, to any or all
person or persons whomsoever in full and with all interest there-
on," &c.   Under these circumstances, as it seems to us, it would
be unauthorized to hold that this assignment, properly construed,
"exacted releases as a condition of payment from accepting cre-
ditors."

The only question remaining is, whether the provision, in the
fourth paragraph of the assignment, that after all the creditors

of the partnership were paid in full, the surplus, if any, should be returned to the assignor, made the assignment fraudulent and void as to a partnership creditor.    Upon this subject we think it unnecessary to do more than state the well settled doctrine as announced in an elementary work of good standing.    "The partnership effects are the primary and natural fund for the payment of the debts of the firm, and the individual property of each member of the firm, &c., the natural fund for the discharge of his debts.    It is therefore perfectly proper for the partners, in making an assignment of the property and effects of the firm for the purpose of discharging their joint debts, to direct the residue of the assigned property, if there should happen to be any, to be returned to them, so that it may be divided between them according to their respective equitable interests therein, leaving each to pay his private debts out of his own individual property.    Such an assignment is not fraudulent, because the rights of the separate creditors are subject to an equitable adjustment of accounts between the parties themselves.    The result will be the same if the assignment contains no direction to pay the residue of the proceeds to the debtors after paying the firm debts, for the law itself creates a resulting trust in their favor as to such surplus." *Bump Fraud. Conv.* (2nd edit.), page 399.    See *Beck* v. *Burdett* (1 Paige, 305; 19 A. D., 436), which was a partial assignment to pay certain debts in full and to return the balance, if any. It was in effect the payment in the manner prescribed of their partnership debts, and, of course, if too much was paid, it should be returned.

The view taken makes it unnecessary to consider the plaintiffs' exceptions.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McIVER.    I concur in the conclusion reached by Mr. Justice McGowan.    While it is quite true that in some of the text books and cases general expressions may be found to the effect that a partial assignment, in which releases are exacted as a condition of preference, is fraudulent and void, yet it seems

34

to me that a careful examination of the cases will show that such an unqualified statement is unwarranted either by reason or authority. On the contrary, the true rule to be deduced from the cases is, that such an assignment is good and valid, unless some actual fraud is intended, or the property not embraced in the assignment is concealed from the creditors, or some benefit is reserved to the debtor, either by way of express provision or by a resulting trust. The vice in such an assignment consists—not in the fact that it is partial, nor in the fact that it exacts releases from the accepting creditors, nor in both combined—but it must be found either in the fact that there was an intent to defraud, or in the fact that full information was withheld from the creditors to enable them to elect whether they should accept the terms of the assignment, or in the fact that a benefit was reserved to the debtor at the expense of his creditors.

There can be no doubt that if Hamel & Co. had offered one of their creditors a note of one of their customers for an amount less than the debt due such creditor, upon condition that he would discharge the debt, and such offer had been accepted, the transaction would have been perfectly legal and open to no objection. Now, if a transfer of a *portion* of the partnership assets to a single creditor, upon condition of discharging his debt, would be legal, it is difficult to understand why a transfer of *all* the partnership assets to *all* of their creditors, upon the same condition, should not be equally legal; and this is precisely what this deed of assignment was intended to accomplish. There is no pretence that there was any intention to defraud—there is no evidence that there was any suppression or concealment of any property from the creditors, for the deed only purports to transfer the partnership property, and it is not pretended that any of that was omitted; and there is no reservation of any benefit to the debtors, for the deed expressly provides that no part of the assets shall be returned to the assignors until all their debts shall be paid in full: not only debts due to the accepting creditors, but also to those who do not accept. In this respect the assignment in question differs widely from those which came under review in some of the cases cited in support of the judgment below. In this case the creditors are not debarred from partici-

pation in the proceeds of the assigned assets except upon condition of releasing their debts, but they are only debarred from preference over other creditors.

I can very well understand that an assignment which provides only for such of the creditors as will accept the terms offered— the execution of releases—and, in the event of their refusal of such terms, not only deprives them of any participation in the assigned assets, but provides, either expressly or by operation of law, that such assets shall revert to the assignor, may be regarded as an objectionable mode of coercing a creditor to accept any terms that his debtor may choose to offer.  But where, as in this case, precisely the same terms are offered to all of the creditors, which, if declined by any one of them, does not defeat his right to enjoy any benefit under the assignment, but only deprives him of a preference which he could otherwise have obtained, it is not easy to understand how it can be said that any coercion is put upon the creditor by the debtor.  There can be no doubt that in a general assignment of all of the debtor's property, such provisions as this assignment contains would have been perfectly legal and valid, even under the provisions of section 2014, General Statutes, which was designed to limit the previously existing rule in regard to preferences; and I do not see why such provisions should invalidate a partial assignment where there is no intentional fraud, and where no facts are concealed from the creditors which are necessary to enable them to determine intelligently whether they will accept terms offered, and where no benefits are reserved to the debtor.

The omission from the assignment of the separate property of the individuals composing the partnership could not operate to hinder, delay, or defeat the claims of the plaintiffs or any other non-accepting creditors; for so soon as they recovered their judgments, there was nothing to prevent them from proceeding to levy on and sell such property just as if no assignment had been made.

Time will not permit a review of all the cases cited to sustain the doctrine that a partial assignment exacting releases as a condition of preference is void, and I must confine myself to such of our own cases as are supposed (erroneously, I think) to sustain

that proposition.    In *LePrince* v. *Guillemot* (1 Rich. Eq., 187), the assignment purported to cover the debtor's whole estate, whereas, in fact, he owned other property in the State of New York which was concealed from the knowledge of his creditors, and the deed was set aside, not because it was a partial assignment in which releases were exacted, but because the concealment of the extra-territorial property was a fraud.    It was, in fact, a false representation to the creditors, made for the purpose of inducing them to release, and thus to secure a benefit to the assignor by misleading the creditors.    So in *Gadsden* v. *Carson* (9 Rich. Eq., 252), the real ground of the decision was that there was actual fraud.    As is said by the Circuit Chancellor, whose decree as to this point was affirmed by the Court of Appeals : "I cannot shut my eyes to the fact that there has been evasion and concealment in regard to this matter."    There was also another feature in that assignment which seems to have had some influence in producing the result, and that was that Carson, without embracing in the assignment any of the assets of the firm of Carson, Belser & Co., still required that the creditors should release that firm also, and this was properly regarded as imposing such unjust, harsh, and onerous conditions upon the creditors as would vitiate the assignment.    It is true that in delivering the opinion of the Court of Appeals Johnston, Ch., does use language which seems to imply that a partial assignment exacting releases would be void, because, simply, of its partial character, on the ground that "a debtor who surrenders only a part of his property has no right to exact a release as the condition of his creditor's acceptance."    But the only authority cited in support of the doctrine is *LePrince* v. *Guillemot, supra,* which, as we have seen, was decided upon the grounds of actual fraud, and *Jacot* v. *Corbett* (Chev. Eq., 71), which was not a case of a partial assignment at all, and was decided upon the ground that the debtor had reserved a benefit to himself, by providing that in no event should the accepting creditors be entitled to receive more than forty *per cent.* of their claims, and that any surplus which the assigned assets might yield above that amount should be returned to the assignor.

I do not think, therefore, that there is any authority, in this

State at least, for the unqualified proposition that a partial assign- . ment of a debtor's property, in which releases are exacted simply as a condition of preference, followed by provision that the balance of the assigned assets which may remain after satisfying the preferred creditors shall be applied to the payment of the claims of the non-accepting creditors *pro rata*, is void ; and I think it might be shown that the weight of authority elsewhere will not sustain such a proposition.

It will be observed that I lay no stress whatever upon the fact that the provision in this deed of assignment, requiring releases as a condition of preference, had become entirely inoperative long before any attack was made upon this deed by the failure of all of the creditors to accept within the time limited, and hence · that the deed, when attacked, was practically, and, in fact, nothing more than an assignment for the benefit of creditors without any preference ; for, as is said by Duncan, Ch., in *Jacot* v. *Corbett, supra,* and acted upon by this court in *Claflin* v. *Iseman,* 23 S. C., 416 : "The character of the transaction must be determined by the interests of the parties at the time, and not by subsequent events."

It seems to me, therefore, that the Circuit Judge erred in holding this deed of assignment void, and that his judgment should be reversed and the complaint should be dismissed.